THE PEOPLE v. EDWARD TROY.

*Criminal law—Assault with intent to do great bodily harm— Constitutionality of act—Juror—Challenge for cause.*

1. Act No. 71, Laws of 1883 (How. Stat. § 9122*a*), which makes it an offense to "assault another with intent to do great bodily harm, less than the crime of murder," is constitutional.

2. A juror who sat on the trial of a respondent for resisting an officer is subject to challenge for cause if called to sit on the trial, at the same term, of another respondent for an assault upon the same officer, with intent to do great bodily harm, less than the crime of murder, claimed to have been made while the other offense was being committed.

Exceptions before judgment from superior court of Grand

Rapids. (Burlingame, J.) Argued April 21, 1893. Decided July 26, 1893.

Respondent was convicted of an assault with intent to do great bodily harm, less than the crime of murder. Conviction reversed, and new trial ordered. The facts are stated in the opinion.

*Maynard & Chase,* for respondent.

*A. A. Ellis,* Attorney General, and *Alfred Wolcott,* Prosecuting Attorney, for the people.

LONG, J. Respondent was informed against, and convicted, under How. Stat. § 9122a, which reads:

"Any person who shall assault another with intent to do great bodily harm, less than the crime of murder, shall be punished by imprisonment in the State prison not more than ten years, or by fine not exceeding eight hundred dollars, or by both, in the discretion of the court."

The case comes to this Court on exceptions before sentence.

It appeared on the trial that on the night of May 23, 1892, two young men, by the names of Flanders and Ottobein, were engaged in a street fight. One of the parties called for help, when a police officer ran to the place, and sought to arrest the two. Ottobein broke away from the officer, and, while the latter was engaged in securing Flanders, he was struck on the head by a stone thrown by a person whom the officer afterwards claimed to recognize as the respondent. Flanders was complained against for the offense of resisting an officer, and the respondent was complained against, and convicted, under the statute above quoted. Flanders' trial came on first in the superior court of Grand Rapids, and he was found guilty by the jury. At the same term respondent was brought to trial, and seven of the jurors who sat in Flan-

ders' case were permitted, under objection, to sit in the case against respondent.

It is claimed by counsel for respondent that the verdict should be set aside for the reasons:

1. That the act under which the conviction was had is unconstitutional and void.

2. That the court erred in permitting the jurors who found Flanders guilty to sit in the case against respondent.

3. That the court erred in its charge to the jury on the question of *alibi*, claimed as a defense in the case.

This statute was passed in 1883. Act No. 71, Laws of 1883. Questions relative to convictions thereunder have been before this Court in *People v. Sweeney*, 55 Mich. 586; *People v. Ross*, 66 Id. 94; *People v. Sebring*, Id. 705; *People v. Lennon*, 71 Id. 298; *Turner v. Circuit Judge*, 88 Id. 359; *People v. Ellsworth*, 90 Id. 442; *People v. Miller*, 91 Id. 639.

In *People v. Sweeney*, the respondent was charged in one count with the crime of assault with intent to kill and murder, and, in the second count, with an assault with intent to do great bodily harm, less than the crime of murder. The claim was made in this Court that the count for the statutory offense of an assault with intent to do great bodily harm, less than the crime of murder, could not be joined with a count for the common-law offense of assault with intent to kill and murder. Mr. Justice SHERWOOD, writing for the Court, overruled this objection, and, in speaking of this statutory offense, said:

"It is unnecessary now to determine the extent of the injury required to bring a case within the statute under which the conviction in this case was had. It very clearly appears from the record that 'great bodily harm, less than murder,' was committed."

The respondent was convicted of this statutory offense, but the case was reversed because of the erroneous admission of evidence by the trial court.

In *People v. Ross,* Chief Justice CAMPBELL wrote for reversal, upon the ground that the proofs offered showed no more than simple assault. The prisoner was discharged.

In *People v. Sebring,* it appeared that, when the cause was called for trial, respondent's counsel moved to quash the information upon the ground that the complaining witness was the respondent's wife. This was the only error relied upon, and Mr. Justice SHERWOOD said:

"It would be a strange rule of law, indeed, either common or statute, which would not allow a wife, when assaulted and beaten until her life is endangered by a cruel and malicious husband, to resort to the courts, and make her complaint, and secure his arrest."

The conviction was affirmed.

In *People v. Lennon,* the respondent was charged in two counts, as in the case of *People v. Sweeney,* but convicted upon the count for assault with intent to do great bodily harm. The defense was that the respondent was acting in self-defense. Mr. Justice MORSE, writing for the Court, said that the proofs did not justify a conviction for any greater offense than assault and battery. The prisoner was discharged.

In *Turner v. Circuit Judge,* it was held that the respondent could not be convicted of assault and battery under an information charging him with the statutory offense of "assault with intent to do great bodily harm, less than the crime of murder," but not charging a battery, nor could the information be amended, after verdict and before judgment, so as to include the latter charge.

In *People v. Ellsworth,* it was held that one or more respondents might be informed against for an assault upon two persons with intent to do great bodily harm, less than the crime of murder, if the assault complained of was made by the same act, and that in *Turner v. Circuit Judge* it was not intended to hold that under such a

charge a person could not be convicted of assault and battery, if such lesser offense were properly charged in the information. The conviction was sustained, Chief Justice MORSE writing for the Court.

In *People v. Miller,* it was held that the intent to do great bodily harm, less than the crime of murder, under certain circumstances, might be inferred from the act itself, and that the facts appearing on the trial showed that the respondent intended to do great bodily harm. The conviction was affirmed. It was said by Chief Justice MORSE in that case:

"The assignments of error are mostly based on the main proposition that, under the evidence on the part of the people, there was no greater crime than assault and battery of which respondent could be convicted."

It is contended by the Attorney General that each of the foregoing cases, of necessity, involved the constitutionality of the act in question; and that especially in the case of *People v. Ellsworth,* supra, was that question raised. It appeared in that case that the respondent's counsel moved to quash the information in the court below on the ground that the information charged no offense known to the laws of this State. The motion was denied. The principal point made in this Court was, however, that the information charged the offense to have been committed upon two persons, and that, under the statute, the word "another" meant one person, and no more. But the conviction was affirmed, and the constitutionality of the act necessarily passed upon. It is also urged by the Attorney General that in *People v. Miller* the attention of the Court was again called to the statute, and the charge of the court below as to what would constitute the offense, and that, necessarily, the Court passed upon its constitutionality.

Assault and assault and battery were offenses at the

common law, and had their well-understood meaning. Our statute has not attempted to define them, but to fix and determine the punishment to be inflicted. Prior to the enactment of the statute under consideration, the Legislature had not attempted to fix any degrees óf the offense of assault, except in cases where some other crime or misdemeanor was perpetrated or attempted to be perpetrated. Under the statute in question, the Legislature has fixed a penalty not to exceed 10 years' imprisonment in the State prison for an assault upon another with intent to do great bodily harm, less than the crime of murder, thus creating an offense of a higher degree than a common assault and battery.

The proposition that only in this State could such a statute be found led us to examine the statutes of other states for the purpose of verifying the statement. We. find that several other states have quite similar statutes.. Section 3875 of McClain's Annotated Statutes of Iowa (1884). provides a punishment for assault with intent to inflict a. great bodily injury. Sections 6141, 6144, of the Minnesota. Statutes (1891) provide a punishment for wrongfully and' willfully wounding or inflicting grievous bodily harm upon another. Section 5595 of the Nebraska Consolidated Statutes (1891) provides:

"If any person assault another with intent to inflict a great bodily injury, he shall be punished, on conviction thereof, by imprisonment in the penitentiary for not. less than· one year nor more than five years."

The Public Statutes of New Hampshire (1891), by chap. 278, sections 20 and 21, add a greater punishment to what is termed "aggravated assault and battery" than is given to simple assault and battery. Section 4377 of Sanborn & Berryman's Annotated Statutes of Wisconsin provides:

"Any person who shall assault another with intent to do great bodily harm shall be punished by imprisonment.

in the state prison not more than three years, nor less than one year."

These statutes have received construction in some of the states.  In *Cokely v. State,* 4 Iowa, 479, it was alleged in the indictment that the defendant committed an assault and battery upon the person of C. C. How, with intent to inflict upon the person of him, the said How, a great bodily injury.  It was said by the court:

"A battery is only an aggravation of the assault, and when the assault is charged to have been made with a dangerous weapon it is a still further aggravation; and where it is charged to have been made with an intention to commit great bodily injury it is only an offense in a different degree.  The assault is still the original offense, and the means, the intent, and the extent to which it is carried qualify only the aggravation of this original offense, to which additional punishment is often affixed by the statute."·

In *State v. Malcolm,* 8 Iowa, 413, it was said:

"It is the intent with which the injury is inflicted or attempted that constitutes the offense of an assault with intent to commit a great bodily injury; and, when the intent is shown, that which would be an assault, unaccompanied with the felonious intent, will be such when thus accompanied."

In none of the states where a similar statute has been in force has its constitutionality been questioned, so far as our researches have gone.  It has been in force in this State nearly 10 years, and never, until the present case, has its constitutionality been seriously questioned, though in *People v. Ellsworth* and *People v. Miller* the question was presented, and passed without much consideration as to its merits.  We see no difficulty about the definition to be given to the offense.  The Iowa court in *Cokely v. State, supra,* found no difficulty in defining it, or in holding that the case under consideration came within the statute. It is the intent with which the injury is inflicted that

aggravates the assault, and brings it within the statutory definition of an assault with intent to do great bodily harm. It must be an intent to do a serious injury, of an aggravated nature. The trial courts seem heretofore to have had no difficulty in defining the offense, or in making a jury comprehend when a case falls within the statutory definition. This point of the learned counsel must be overruled.

We think, however, that the court erred in permitting the jurors who sat in the Flanders case to sit in the present. The facts are nearly identical, and must necessarily have all been called forth in the Flanders trial. The jury in that case must have considered them, and reached some opinion as to the merits of the controversy in the present case. The respondent was entitled to a fair and impartial trial by an impartial jury, who had no preconceived opinions of his guilt or innocence. We are aware that some English and American authorities hold that jurors who have sat in one case are not disqualified from sitting in a case against another joint respondent, who has taken a separate trial, and involving the same state of facts. We are not inclined to follow that doctrine. Where the issue is the same in both cases, it is but fair to the respondent that he have another panel of jurors to try his cause.

For this reason the verdict must be set aside, and a new trial ordered.

The other Justices concurred.